CHAMBERS ET AL., RESPONDENTS, *v.* JONES ET AL., AP-
PELLANTS.

[Submitted November 12, 1895. Decided November 25, 1895.]

PRACTICE—*Separate trial of legal and equitable issues.*—When both legal and equitable
defenses are interposed to an action, the issues raised by such defenses may be tried
separately.

EJECTMENT—*Judgment for certain plaintiffs.*—When the defendant in ejectment alleged
as an equitable defense that the plaintiffs, for a consideration, had agreed to deed to
him the premises in controversy, but by mutual mistake a portion of the land was
omitted from the deed, and the evidence showed that as to certain of the plaintiffs
the mistake was mutual, but as to the other plaintiff, it was not, a judgment in favor
of the plaintiffs against whom such defense was not proved, was proper.

PATENTS—*Mining and townsite—Priority.*—Where a mining claim is located upon land

afterwards entered as a townsite, the prior issuance of the townsite patent does not affect the mining location, since the mining patent, when issued, takes effect from the date of the location of the claim by relation.

SAME—*Conclusiveness—As to location notice.*—After the issuance of a patent to a mining claim the sufficiency of the location notice cannot be questioned. (*Talbott* v. *King*, 6 Mont. 76; *Butte City Smokehouse Lode Cases*, 6 Mont. 397, cited.)

EVIDENCE—That a location notice and mining patent were for the same premises is sufficiently established by the evidence of a witness, who testifies to their identity, where no proof is offered to the contrary.

SAME—*Copies of documents—Public officers.*—Under section 542, Code of Civil Procedure (1887) permitting copies of the records in the custody of public officers, certified under the official seal and verified by the oath of such officer to be read in evidence, it is not error to exclude a copy so offered, which is neither certified by the seal of the officer nor verified by his oath.

*Appeal from Second Judicial District, Silver Bow County*

EJECTMENT.    Judgment was rendered for certain of the plaintiffs by McHATTON, J.    Affirmed.

Statement of the case by the justice delivering the opinion.

This is an action in the nature of ejectment. It was commenced July 31, 1882. Since that date there have been various changes in the parties, and upon this trial, which took place February 10, 1893, the plaintiffs were R. C. Chambers, M. J. Connell, J. A. Murray and Sarah F. Murray, H. S. Clark and Laura Clark. The case was on that day tried only as to the defendant Loeber. The complaint was the ordinary one in ejectment. The plaintiffs relied for title upon their alleged estate in the Arctic quartz lode mining claim, located March 23, 1877, and patented March 15, 1883. Defendant Loeber was a grantee under the townsite patent for the city of Butte, granted by the United States to the probate judge, in trust, September 26, 1877. A large number of town lot claimants were originally joined as defendants, among whom was this defendant Loeber, who alleged that he was in possession of, and had the right of possession to, lot 18, and 12 feet on the east side of lot 17, in block 14, in the townsite as surveyed. These premises were included in the exterior boundaries of the Arctic lode mining claim. Defendant made an equitable and legal defense. The other facts in the case may be more appropriately stated in the opinion as they are discussed.

Judgment was in favor of a portion of the plaintiffs, to wit, Murray and wife and Clark and wife. Defendant's motion for a new trial was denied. From that order and from the judgment, he appeals.

*F. T. McBride* and *James W. Forbis,* for Appellant.

The grantees named in the patent are strangers to the Arctic location of March 23, 1877. The plaintiffs, S. F. Murray and Laura Clark cannot make their patent relate back to an invalid record of location made by strangers to them, five years prior to their entry of their Arctic lode claim, for the purpose of defeating the legal title of defendant, Loeber, under a patent issued four years and six months prior to their entry. Relations are fictions in law which will never do wrong and can never be applied to a void act. (*Butler* v. *Baker* case, 3 Coke 23; *Berrington* v. *Parkhurst,* 13 East 489; *Jacksen* v. *Stevens,* 16 Johns 110; *Williams* v. *Field,* 2 Sand'f. Chan. 533–568; *Dow* v. *Howland,* 8 Cow. 277; *Gibson* v. *Choteau,* 13 Wall. 93–101; *Lynch* v. *Bernal,* 9 Wall. 317.) The question presented is,—what are the relative merits of the Arctic patent relied upon by plaintiffs and the Butte Townsite patent relied upon by defendant Loeber. As a general proposition, "a patent is the highest evidence of title and is conclusive as against the government and all claiming under junior patents or titles until it is set aside or annulled by some judicial tribunal." (*United States* v. *Stone,* 2 Wall 525; *Moore* v. *Robins,* 96 U. S. 533.) See also *Iron Silver Mining Co.* v. *Campbell,* 135 W. S. 292, 293, 294; *Davis* v. *Wiebold,* 139 U. S. 507; *Power* v. *Richards,* 14 Sup. Ct. Rep. 454; *Deffenback* v. *Hawke,* 115 U. S. 392; *Davis' Adm's* v. *Wiebold,* 11 Sup. Ct. Rep. 628.

*William Scallon,* for Respondent.

I. Respondent submits that the testimony is wholly insufficient to establish any mistake, or any agreement concerning the settlement of the suit, or any settlement of any kind, ex-

cept in relation to lot 18, to wit: for the execution of the deed which the defendant holds. "We take the general doctrine to be that, when in a court of equity it is proposed to set aside, to annul, or correct a written instrument, for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal and convincing, and that it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt." (*United States* v. *Maxwell, Land Grant Case,* 121 U. S. 325.) And unless a mistake were clearly proved, parol evidence of the alleged agreement would be incompetent. (2 Pomeroy Equity Jurisprudence, § 859.)

II. The patent and the location notice of the Arctic were properly admitted. The identity of the ground described in each of these papers was proved. To say that the patentees, or those claiming under them, would be bound to connect themselves by evidence with the locators, would be to require the proof of a complete chain of title from the locators to the patentees. That has never been required, and does not seem reasonable. The presumption is, that the patent was issued to the parties lawfully entitled thereto. This implies that the patentees were the successors in interest to the locators, else the patent would not have been issued to them. The objection to the location notice on account of deficient affidavit cannot be sustained after the issuance of a patent. The patent is conclusive evidence that the location, as to its form, was valid when made. It has been so accepted by the United States, and that must be held to be good as against third parties. These points have been decided in the "Smokehouse" cases, which have never been reversed. (*Silver Bow M. & M. Co.,* v. *Clark,* 5 Mont. 378; *Talbot* v. *King,* 6 Mont. 76; Butte City Smokehouse Cases, 6 Mont. 397; *King* v. *Thomas,* 6 Mont. 409; *Deffeback* v. *Hawke,* 115 U. S. 292; *Sparks* v. *Pierce,* 114 U. S. 412.)

DE WITT, J.—Upon the trial, the district court separated the trial of the equitable defense and the legal defense. The

first was tried to the court without a jury, and the second before the court and a jury. Defendant assigns this action of the court as erroneous. He does not seriously contend for this point, however, and there is no doubt that the court was correct in this procedure. The equitable defense was something wholly separate from the legal defense, and was very properly tried separately. That findings of a jury in an equitable case are only advisory to the court has been too long settled to require further consideration.

We will first examine the equitable defense. Defendant alleges that in April, 1885, he and the plaintiffs made an agreement whereby they compromised and settled this lawsuit and all controversy between the plaintiffs and this defendant as to lot 18, and 12 feet of lot 17, which were the premises concerned in this action. He alleges that plaintiffs agreed to make him a deed of said lot and a half, for which he was to pay them the sum of $50, and that they (plaintiffs) were to dismiss the suit as to him; that he paid the $50; and that plaintiffs made and delivered to him a deed for only the one lot, and, by mistake, omitted to insert in that deed the east 12 feet of the other lot. He alleges that the mistake was mutual, and was undiscovered until February, 1891. He also sets up that, since this agreement and compromise, he has continued in possession of all the premises, and has built a two-story brick building thereon, at a cost of $16,000. Defendant's allegations were denied by the plaintiffs' replication.

This is the question which was tried to the court without a jury. Upon this question it appeared by the evidence that Messrs. Knowles & Forbis, attorneys at law, were at the time of the alleged compromise the attorneys for the plaintiffs, and that, furthermore, Hon. Hiram Knowles, a member of that firm, was the attorney in fact for the plaintiffs R. C. Chambers and M. J. Connell. Judge Knowles and Mr. Forbis were called by the defendant to prove the alleged mutual mistake in making the deed from plaintiffs to defendant, which alleged mistake consisted in omitting from that deed the east 12 feet of lot 17. The testimony of Messrs. Knowles and Forbis, as

witnesses, satisfied the district court that, as far as Chambers and Connell were concerned, the mistake had been mutual, and that it was the intention of these two plaintiffs that the deed should contain both lot 18 and the east 12 feet of lot 17.

The court sustained the equitable defense as to these two plaintiffs, Chambers and Connell, but held, further, that the defense was not made out as to Murray and wife and Clark and wife, plaintiffs. We have read all the testimony upon this point with care. It may be said that the testimony of Loeber himself did not even tend to prove that there was any agreement between himself and the Murrays and Clarks that this deed should contain the east 12 feet of lot 17. Taking the testimony of Loeber in connection with that of Knowles and Forbis, it cannot be said that there was any substantial showing that the Murrays and Clarks had ever agreed with Loeber that the payment by Loeber to the plaintiffs of $50 should settle the controversy as to this east 12 feet, and entitle the defendant to a deed for those feet. Not only was there no abuse of discretion by the district court in holding against the defendant's equitable defense as to the Clarks and Murrays, but there was nothing substantial upon which the court could have sustained it. We shall therefore affirm the judgment of the district court upon the equity side of the case.

After this disposition of the equitable defense, the court tried the law side of the case, with a jury. This portion of the case was simply an action of ejectment between a mining claimant, as plaintiff, and a townsite claimant, as defendant. The case was practically a duplicate of many cases of that nature which have been tried in that court, and in which judgments for the plaintiffs were affirmed in this court. (*Silver Bow M. & M. Co.* v. *Clark*, 5 Mont. 378, 5 Pac. 570; *Talbot* v. *King*, 6 Mont. 76, 9 Pac. 434; Butte City Smokehouse Lode Cases, 6 Mont. 397, 12 Pac. 858.)

Judgment in the trial of the law side of this case was for plaintiffs; that is, was for the plaintiffs after excluding Chambers and Connell, against whom the court had sustained the equitable defense.

It does not seem to us to be profitable to re-enter the discussion of the Smokehouse cases. They decide the questions of law involved in this case. They never came before the United States supreme court on appeal, but of them that court said in *Davis' Adm'r* v. *Wiebold,* 139 U. S. 530, 11 Sup. Ct. 628, as follows: "In the several cases to which we have been referred in the fifth and sixth Montana Reports (*Silver Bow M. & M. Co.* v. *Clark,* 5 Mont. 378, 5 Pac. 570; *Talbot* v. *King,* 6 Mont. 76, 9 Pac. 434; Butte City Smokehouse Lode Cases, 6 Mont. 397, 12 Pac. 858), which involved contests between parties claiming under mining patents and others claiming under townsite patents, and in which very able and learned opinions were given by the supreme court of the territory of Montana, the mining claim patented had been located, and the rights of the mining claimant had thus attached, before the townsite patent was issued. The patent which subsequently followed was a mere perfection of the right originated by the location, and to which it took effect by relation. It was held, in accordance with this opinion, that the prior mining location was not affected by the townsite entry."

In the case at bar the United States patent for the Arctic mining claim was subsequent to the townsite patent, but the location of the mining claim was prior to the townsite entry. The plaintiffs introduced in evidence the Arctic location notice, in order to connect the patent with the location. (See cases last cited; also, *Davis' Adm'r* v. *Wiebold, supra.*)

It is contended by the appellants that the location notice was defective. But as to this matter it was said in *Talbot* v. *King,* at page 103, 6 Mont.: "All these matters pertaining to the issuance of a patent for a mining claim—the discovery and location, the marking and bounding, so that the claim may be identified and its lines readily traced, the notice, and the work and labor to be performed—are all matters that come before the land department, and are conclusively adjudicated therein. That department supervises the issuance of the patent. It is a special tribunal, created for that purpose; and, within the scope of its jurisdiction, its adjudications are final and conclu-

sive. Before a mining claim patent can issue, it must be established in the land department by competent evidence that there has been a discovery within the boundaries of the claim, and a notice and location according to law; that the necessary work has been done, and that all preliminary and precedent acts have been performed, which authorize and justify the issuance of the patent.''

It was also again said in Butte City Smokehouse Lode cases, 6 Mont., at page 409, as follows: "And so the Smokehouse patent was itself evidence that in the discovery, the location of the claim, and in all proceedings up to the issuance of the patent, the law had been complied with.'' This question, therefore, seems to be at rest.

Again, appellant contends that it was not shown that the location notice and the patent were for the same premises. We think this fact was sufficiently shown. The patent and location notice were offered in evidence together, and Murray was examined as a witness thereto, and testified to their identity. There was no proof offered to the contrary, and, under these circumstances, we think the evidence was sufficient.

Another error claimed by appellant is that certain records of the United States land office, offered in evidence by him, were excluded. They were certified in the following language by the receiver of the land office: "I, Geo. M. Bourquin, receiver U. S. land office, Helena, Montana, do hereby certify the foregoing to be a true, correct copy of the original pre-emption declaratory statement for the townsite of Butte, Montana, filed in this office May 2, 1876, by Orville B. O'Bannon, probate judge, with all indorsements thereon. In witness whereof, I have hereunto set my hand, this 7th day of February, 1893. Geo. M. Bourquin, Receiver.''

The law in reference to the certification of copies of documents in public offices is as follows:

"Sec. 542. A copy of any record, or document, or paper, in the custody of a public officer of this state, or of the United States within this state, certified under the official seal, or verified by the oath of such officer to be a true, full, and cor-

rect copy of the original in his custody, may be read in evidence in an action or proceeding in the courts of this state, in the like manner, and with the like effect, as the original could be if produced." (Code of Civil Procedure 1887.)

This certification by the receiver of the land office was not at all in compliance with the statute. The paper was neither certified under the official seal of the receiver, nor was it verified by his oath. The document was excluded for this reason. We are of opinion that in this there was no error.

Everything else in the case is decided by the old townsite cases in Butte above referred to. The judgment of the court enjoined Chambers and Connell from further prosecuting this suit as to the east 12 feet of lot 17, block 14, except as to the minerals under the surface of said lot. The defendants other than Chambers and Connell owned an undivided half of said premises in controversy. The judgment was rendered for them for said undivided half of the east 12 feet of said lot 17.

Under the views that we have expressed above, this judgment is affirmed.

*Affirmed.*

PEMBERTON, C. J., and HUNT, J., concur.

